**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

G.B., an infant by his Parent and Natural Guardian,
FELICIA BOHNING, on behalf of himself, and all
others similarly situated,

            Plaintiff,

      v.

YOUNG MEN'S CHRISTIAN ASSOCIATION AND
WOMAN'S COMMUNITY CENTER OF ROME,
NEW YORK d/b/a Rome Family YMCA,

          Defendant.

---

**CASE NO.:**  6:23-cv-188 (DNH/ML)

**JURY TRIAL DEMANDED**

## COMPLAINT FOR INJUNCTIVE RELIEF

      Plaintiff, G.B., an infant by his Parent ("G.B.") and Natural Guardian, Felicia Bohning

(his "Mother") (collectively, the "Plaintiff"), by and through undersigned counsel, and pursuant

to the Federal Rules of Civil Procedure and all other applicable rules, statutes, regulations and

governing legal authorities, hereby files this Complaint and sues the Young Men's Christian

Association and Woman's Community Center of Rome, New York, a New York not-for-profit

corporation, d/b/a Rome Family YMCA, (hereinafter the "YMCA" and/or "Defendant") for

injunctive relief, attorneys' fees and costs, including but not limited to disbursements, court

expenses and fees, pursuant to 42 U.S.C. § 12181 *et seq.* (hereinafter "Americans With

Disabilities Act" or "ADA") and the ADA Accessibility Guidelines 28 C.F.R. Part 36

(hereinafter "ADAAG"), and for injunctive relief and damages, pursuant to the New York State

Human Rights Law ("NYSHRL"), Article 15 of the New York State Executive Law ("Executive

Law"), New York State Civil Rights Law ("Civil Rights Law"), § 40, and alleges as follows:

DocuSign Envelope ID: 40D846DD-85BA-4144-BEE6-FF2801C00302

## NATURE OF CLAIMS

1. This lawsuit is in response to the inexcusable discriminatory misconduct by the Defendant when it segregated, a young boy referred to herein as G.B., who was born with a congenital anomaly and as a consequence lives with physical disabilities, by refusing and failing to provide G.B. with access to the elevator in order to access the second floor of the Rome Family YMCA, a place of public accommodation, which, among other things, (i) isolates G.B. to the first floor of its gymnasium, fitness center and community center and (ii) excludes G.B. from his friends and other members of the facility as a result of his disability and mobile impairment. This intentional act, which is unjustified and illegal has caused G.B. tremendous shame, embarrassment and humiliation. As a result, G.B., who continues to go to the YMCA approximately two times per week, has been restricted to the first floor of the YMCA and as a consequence has been unable to exercise or freely associate with his friends and/or take advantage of all of the privileges and opportunities afforded by his membership at the YMCA. Rather than comply with federal and state anti-discrimination laws with regard to its facility, the Defendant made a financial decision to ignore the legal requirements for ensuring that their place of public accommodation was accessible to all individuals with disabilities, including G.B.. Defendant also made an informed decision that G.B. should either stop utilizing its facility, or be limited to access on the first floor, because they falsely claim that G.B. has no "safe" way of accessing the upper floors, despite the fact that there is a fully functioning elevator available for his use. The YMCA is a public accommodation that provides to the public, at large, a wide array of facilities, amenities, services, classes, and other programs, but at the same time, it imposes unlawful barriers to access that make it difficult, if not impossible, for patrons who are physically disabled to use and enjoy the

public accommodations at the facility.  Specifically, the Defendant has made it a policy that individuals with physical disabilities, and in particular, wheelchair bound patrons such as Defendant, are prohibited from using the public elevator to access the upper floors of the facility, and accordingly such individuals are prevented from being able to enjoy the Defendant's, amenities, services, events, classes, and programs in the same manner as individuals without physical disabilities. Accordingly, this lawsuit intends to remediate Defendant's place of public accommodation so that it becomes fully accessible to the Plaintiff, and public at large, in the same manner in which non-disabled customers are able to use the facility, and so that it implements employee training, policies and procedures that are not discriminatory or designed to harass and humiliate G.B. and his family.

## JURISDICTION & VENUE

2. This is an action for declaratory and injunctive relief brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*. This Court is vested with original jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and § 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims that arise out of the same nucleus of facts and circumstances as the subject federal claims.

3. Venue is proper and lies in this Court pursuant to 28 U.S.C. §1391 (B) in that the transaction or occurrence giving rise to this lawsuit occurred in the State of New York.

4. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 et seq.), and Civil Rights Law 40-b. The remedies provided by NYSHRL against discrimination are not exclusive and state administrative remedies.  Such

DocuSign Envelope ID: 40D846DD-85BA-4144-BEE6-FF2801C00302

remedies do not need to be exhausted in connection with a lawsuit commenced pursuant to the Federal Civil Rights Act.

## THE PARTIES

5. At all times material hereto, Plaintiff, G.B., was and is a resident of Oneida County, which is located within the Northern District of New York. He is sixteen years old and participates in this lawsuit by and through his parent and lawful guardian Felicia Bohning.

6. G.B. has at all material times suffered from a "qualified disability" under Title III of the ADA; Plaintiff was born with a congenital anomaly called Arthrogryposis Multiplex Congenita and as a result suffers from a physical disability which substantially limits his major life activities.  Specifically, certain portions of G.B.'s bones and joints are fused together, which renders his knees, elbows, and wrist joints immobile. G.B. has a physical disability within the meaning of the laws of the NYSHRL. Specifically, his Arthrogryposis Multiplex Congenita substantially interferes with the major life activity of walking; G.B. utilizes a motorized wheelchair that he controls with his elbow.

7. The Defendant, Young Men's Christian Association and Woman's Community Center of Rome, New York, a New York not-for-profit corporation, d/b/a Rome Family YMCA, is authorized to conduct, and is conducting business within the State of New York.

8. Upon information and belief, Defendant is the lessee and/or operator of the real property, and the owner of the improvements where a fitness center and community center is located, which is the subject of this lawsuit, the facility commonly referred to as the Rome Family YMCA, which is located at 301 West Bloomfield Street, Rome, New York 13440 (hereinafter the "Subject Facility").

9.  The Subject Facility is a place of "public accommodation" as that term is defined under the ADA; specifically, the Subject Facility is operated as a gymnasium, fitness center, and community center that offers a wide variety of facilities and classes to the public, including many programs and events specifically intended for youths and teens. The second floor of the Subject Facility contains a weight room and exercise facilities open to the public; the third floor contains a Teen Center that features amenities such as video games, board games, and a snack bar.

10. In or around April 4, 2018, G.B. experienced an incident as a member at the Subject Facility (the "2018 Incident"). During this time, G.B. was patronizing the YMCA on the second floor of the Subject Facility, when the power went out, which suddenly rendered the Subject Facility's elevator non-functional. As a result, G.B. was carried down the stairs and out of the Subject Facility, leaving his motorized wheelchair on the second floor, and G.B. without the ability to independently travel without assistance.  Shortly following the 2018 incident, a representative of the Defendant assured G.B.'s Mother that she would be contacted about retrieving G.B.'s electric wheelchair that evening, but Defendant failed to contact G.B.'s Mother, causing G.B. to be without his medically-required motorized wheelchair for the duration of the day and overnight.

11. As a result of the 2018 Incident, G.B. with the assistance of the Disability Rights New York, worked with the YMCA, and the local Rome Fire Department, to implement an accessible emergency preparedness plan so that G.B. could continue to enjoy his membership at the YMCA in the same manner as other members without disabilities.

12. In addition, the YMCA agreed to implement, and G.B. agreed to accept, the following procedures in the event of a future emergency, which included:

DocuSign Envelope ID: 40D846DD-85BA-4144-BEE6-FF2801C00302

a. Implementation of an area of refuge in which individuals with mobility limitations and disabilities could congregate in an upstairs conference room to await rescue assistance from the fire department. The YMCA also agreed to post a sign in the area of refuse so that it can be easily identifiable in the event of an emergency to ensure professional evacuation;

b. Designation of a wheelchair congregation area in which the upstairs conference room would also be an area that individuals could retrieve their wheelchairs or mobility devices following an evacuation; and

c. Enactment of a phone tree to assist families in gathering information from the Rome Fire and Police Departments and in wheelchair or mobility device retrieval (the "YMCA Policy Changes").

13. As a result of the Defendant's YMCA Policy Changes, G.B. continued as a member at the YMCA and still visits the Subject Facility on a regular basis (i.e., approximately twice per week).

14. Notwithstanding the YMCA Policy Changes, Defendant resumed its discriminatory policies and old practices towards individuals with disabilities, including G.B.

15. On December 17, 2022, G.B. visited the Subject Facility with the intention to use and enjoy the YMCA in the same manner as individuals without disabilities. Specifically, G.B. intended to use the fitness facilities located on the second floor of the Subject Facility, including weights and resistance bands, as he had on numerous occasions over the preceding several years.

16. Upon his attempt to access the Subject Facility's second floor via the elevator, which was operational, G.B. was notified by a staff member for the Defendant that he was prohibited

and no longer able to visit the second floor of the Subject Facility, as a result of his disability and mobility device. The Defendant's employee made this statement to G.B., in front of his friends and other members of the YMCA, and specifically prohibited G.B. from accessing the upper floors; despite allowing G.B.'s friends and other members without disabilities to use the elevator and access the upper floors.

17. Defendant's exclusion of G.B. from the amenities on the upper floors of the Subject Facility caused significant shame, embarrassment, and mental anguish to G.B. This continues today, as GB continues to visit the YMCA approximately two times per week and is prohibited from accessing the second floor via elevator at the Subject Facility.

18. As a result, Defendant has continued to deny G.B. access to the second floor of the Subject Facility and therefore has prevented his use and enjoyment of the YMCA. Moreover, this discriminatory practice is a breach of the YMCA Policy Changes that were agreed upon and implemented following the 2018 Incident. More specifically, the Defendant's policy change to not permit G.B. to use the elevator is discriminatory, on its face, and contradictory to the purpose of the elevator and YMCA Policy Changes, which are geared to allow individuals with limitations like G.B. to use and enjoy the fitness club.

19. As a result, Plaintiff has been denied full access to, and full enjoyment of the facilities at the Subject Facility, and/or the accommodations offered to the public therein in that Plaintiff was restricted and limited by his disabilities due to the Subject Facility's failure to provide an accessible means for G.B. to access the upper floors of the Subject Facility.

20. As a result, Plaintiff suffered an injury in fact.

21. That, Plaintiff desires to revisit the upper floors of the Subject Facility in the future to fully take advantage of his membership with the YMCA and exercise and/or socialize with his

friends, when and if the Defendant provides an accessible means for G.B., and other individuals who rely on assistive devices for mobility, to access the amenities on the upper floors of the Subject Facility.

22. That, Plaintiff continues to be injured in that he is unable to and continues to be discriminated against due to the discriminatory policies and architectural barriers that remain in place at the Subject Facility, which are in violation of the ADA and New York State anti-discrimination laws.

23. Venue is proper in the Northern District of New York because the Defendant's acts of discrimination occurred in the Subject Facility, which is located in this District.

## CLASS ALLEGATIONS

24. Plaintiff brings this class action on his own behalf, and as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of a class of people defined as follows:

25. All disabled individuals with disabilities affecting the ability to walk, or other physical disabilities, who have been unable to access the amenities on the upper floors of the Subject Facility.

26. Excluded from the Class is any person who is an executive, officer, employee, and/or director of the Defendant.

27. The members of the Class are so numerous that joinder of all Class members is not practical. The precise size of the Class will be determined through discovery.

28. Plaintiff's claims are typical of those of the entire Class. Plaintiff, along with every member of the Class, has suffered civil right violations because of Defendant's continuing failure to comply with the ADA and ADAAG, and New York State laws.

DocuSign Envelope ID: 40D846DD-85BA-4144-BEE6-FF2801C00302

29. Plaintiff can and will adequately protect the interests of all members of the Class and has retained competent counsel experienced in both ADA and class action litigation. Plaintiff has no interest that is contrary to the interest of the Class members in this case.

30. A class action is far superior to any other possible method for adjudicating this controversy. Each member of the Class is entitled to injunctive relief, as well as possible statutory damages under New York law. The expense and burden associated with individual litigation of each claim held by each member of the Class would be extraordinarily inefficient for Defendant, members of the Class, and the courts.

31. Common questions of law and fact prevail with respect to all members of the Class and predominate over questions applicable solely to individual Class members. Among such common questions of law and fact is whether Defendant has violated Federal and New York State statutory obligations by failing to comply with the ADA, ADAAG, and NYSHRL such that all physically disabled persons are afforded fair and equal access to any gymnasium, fitness center, community center, or other place of public accommodation owned by Defendant.

32. Plaintiff knows of no special or unique difficulties that would be encountered in the management of this litigation that might preclude its maintenance as a class action.

33. The names and addresses of disabled individuals who have encountered non-compliance as set forth herein, and who have been excluded from full and equal access to the Subject Facility, is obtainable through traditional channels used to identify members of any class; notice of this case, informing members of the Class that this case exists and that he/she may be a member of the Class, can be delivered by U.S. or electronic mail, using techniques and in a form of notice similar to those customarily used in class action litigation, and can

additionally be advertised by television, internet, radio, and other means of transmission that are likely to reach members of the Class.

## FIRST CAUSE OF ACTION
## <u>VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT</u>

34. Plaintiff re-avers and re-alleges the allegations set forth above, as though fully set forth herein.

35. On or about July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

36. Congress specifically found, *inter alia*, that:[1]

    i.    Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

    ii.    Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

    iii.    Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities;

---

[1] 42 U.S.C. § 12101(a)(1) – (3), (5), and (9).

iv.    Discrimination against individuals with disabilities persists in such critical areas of employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services; and,

v.    The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

37. Congress explicitly set forth the purpose of the ADA; to wit:[2]

i.    Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

ii.    Provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

iii.    Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

38. The congressional legislation provided commercial enterprises with a period of one and a half years from the enactment of the statute to implement the requirements imposed under the ADA.

39. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).[3]

---

[2] 42 U.S.C. § 12101(b) (1)(2) and (4).
[3] 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

DocuSign Envelope ID: 40D846DD-85BA-4144-BEE6-FF2801C00302

40. Pursuant to 42 U.S.C. §1281(7) and 28 C.F.R. §36.104, the Subject Facility, which is subject to this action is a public accommodation because it provides good and services to the public.

41. Upon information and belief, the Defendant has sufficient income to make readily achievable accessibility modifications to its policies and procedures at Subject Facility.

42. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of Attorney General, promulgated federal regulations to implement the requirements of the ADA (the "ADAAG").[4]

43. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).[5]

44. Plaintiff intends to return to the Subject Facility (and make use the upper floors) due to the Subject Facility's proximity to his home and for the enjoyment that G.B. has when exercising and utilizing other amenities located on the upper floors of the Subject Facility that the Subject Facility offers to non-disabled patrons, especially with his friends.

45. Plaintiff suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, as a result of this incident.

46. The Subject Facility is legally required to be, ***but is not***, in compliance with the ADA and/or ADAAG.

47. That, Defendant has failed to comply with Title III of the ADA, 42 U.S.C. § 12182 (b)(2)(A)(II), wherein it refused and failed "to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with

---

[4] 28 C.F.R. Part 36.
[5] 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

48. That, Defendant unlawfully discriminated against Plaintiff by denying G.B. the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of the Subject Facility[6].

49. Plaintiff has attempted to use and enjoy the Subject Facility, but has been prohibited from doing so, because of his disabilities; specifically, Plaintiff was informed that he was prohibited from using the elevator because he uses a motorized wheelchair, and he was not provided with any alternative means of accessing the Subject Facility's upper floors.

50. Plaintiff was forced to leave the Subject Facility because of Defendant's policies, which prohibits individuals who use motorized wheelchairs to access the upper floors of the Subject Facility by elevator.  The Defendant's policies constitute violations under the ADA.  These violations, which include but are not limited to those enumerated herein, prohibit Plaintiff from using and enjoying the Subject Facility, and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein.

51. Defendant utilizes standards, criteria, or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

52. Remediating the ADA and/or ADAAG violations by implementing policies and procedures and employee staff training for physically disabled patrons, as set forth herein is both technically feasible and readily achievable.

53. Plaintiff intends to visit and utilize the upper floors of Subject Facility in the future and upon Defendant's compliance with an Order of this Court requiring that Defendant remedy the

---

[6] 42 U.S.C. 12182(b)(1)(A)(I)

subject ADA violations so that G.B. may use and enjoy the goods, services, facilities, privileges, advantages and/or accommodations offered at the Subject Facility. However, in light of G.B.'s disability, unless and until the Subject Facility is brought into compliance with the ADA, Plaintiff will remain unable to fully, properly, and safely use and enjoy the Subject Facility, and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein.

54. As a result of the foregoing, Defendant has discriminated against, and continues to discriminate against the Plaintiff, and others similarly situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Facility. Defendant's discrimination is specifically prohibited by 42 U.S.C. § 12182, *et seq.*

55. Moreover, Defendant will continue to discriminate against Plaintiff, and others similarly situated, unless and until it is compelled by this Court to permit G.B. to use the elevators at the Subject Facility and remove its discriminatory policies that violate the ADA and/or ADAAG, including but not limited to those specifically set forth herein, and to make the Subject Facility, accessible to and usable by persons with disabilities, including Plaintiff.

56. Plaintiff is without adequate remedy at law, and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant is required to remove the physical barriers, dangerous conditions, and ADA and/or ADAAG violations that exist upon the Subject Facility, including but not limited to those set forth herein.

57. This Court is vested with authority to grant injunctive relief sought by Plaintiff herein, including entry of an order requiring alteration and modification of the Defendant's

DocuSign Envelope ID: 40D846DD-85BA-4144-BEE6-FF2801C00302

employee training, policies and procedures for operating the Subject Facility, so as to make them readily accessible to and useable by individuals with disabilities, including but not limited to Plaintiff to the extent required by ADA and/or ADAAG.

58. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay counsel reasonable attorneys' fees, costs, and litigation expenses, all of which are recoverable against the Defendant.[7]

59. Pursuant to the ADA, Plaintiff is entitled to have his reasonable attorneys' fees, costs and expenses paid by the Defendant.

60. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL, N.Y. EXEC. LAW ART. 15

61. Plaintiff re-avers and re-alleges the allegations set forth above, as though fully set forth herein.

62. G.B. suffers from a rare congenital anomaly called Arthrogryposis Multiplex Congenita that has resulted in significant physical disabilities that impedes his ability to walk unassisted.

63. Therefore, Plaintiff suffers from a disability within the meaning of N.Y. Exec. Law § 296(21).

64. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

---

[7] 42 U.S.C. §§ 12205, 12117

65. The New York State Human Rights Law provides:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation...because of the ... disability ... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof ... to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of ... disability ... [8]

66. In 2019, the New York legislature enacted legislation that provides the New York State Human Rights Law shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". See Executive Law § 300 [effective date: August 12, 2019].

67. The amendment of Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005 (Local Law 85 of 2005), the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

68. The Subject Facility is a place of public accommodation as defined by the NYSHRL because it owns and operates a public facility (i.e., the Subject Facility).

69. Plaintiff visited the Subject Facility and encountered architectural barriers, discriminatory policies and procedures, as well as, employees that acted as barriers described herein.

70. By maintaining architectural barriers and policies and procedures that discriminate against people with disabilities and Defendant's lack of employee training through the actions described above, Defendant has, directly or indirectly, refused, withheld, and/or denied to

---

[8] NYS Exec. Law § 296 (2) (a).

Plaintiff, because of his disability, the accommodations, advantages, facilities or privileges thereof provided at the Subject Facility.

71. Defendant discriminated against Plaintiff in violation of NYSHRL (Executive Law § 296(2)), by maintaining and/or creating an inaccessible place of public accommodation.

72. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

73. Plaintiff has been damaged and will continue to be damaged by this discrimination in an amount to be determined at trial.

74. Plaintiff is also entitled to reasonable attorneys' fees and costs.

75. Plaintiff respectfully requests a judgment pursuant to N.Y. Exec. Law § 297, including compensatory damages contemplated by § 297(9).

76. Plaintiff seeks a judgment pursuant to N.Y. Exec. Law §297, including damages pursuant to § 297(9) thereof.

## THIRD CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS LAW ART. 4

77. Plaintiff re-avers and re-alleges the allegations set forth above, as though fully set forth herein.

78. Plaintiff served notice thereof upon the attorney general as required by Civil Rights Law §41.

79. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place

17

shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . . ."

80. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

81. Plaintiff is within the jurisdiction of New York because Plaintiff is a resident of New York State and personally visits the Subject Facility, a place of public accommodation, in New York State, at least two times per week. The Defendant targets New York citizens in New York State and is a sales establishment and public accommodation within the definition of Civil Rights Law § 40-c(2). The Subject Facility provides services, privileges, and/or advantages of Defendant.

82. Defendant is subject to the Civil Rights Law because it owns and operates the Subject Facility. Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

83. Defendant is violating Civil Rights Law § 40-c(2) in imposing access barriers to the Subject Facility, causing the Subject Facility and the services integrated with the Subject Facility to be inaccessible to the physically disabled. This inaccessibility denies disabled patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.

84. To make the Subject Facility accessible to individuals with disabilities, Defendant need to immediately cease and discontinue its existing unlawful policy and procedure, which unlawfully prohibits wheelchair bound patrons from accessing the upper floors of the Subject

Facility via use of its elevator, and to properly train its employees, and establish policies and procedures to allow for members with disabilities and in wheelchairs to use the elevator. Ordering the Defendant to ensure the Subject Facility becomes accessible by making such modifications, implementing such policies and procedures and properly training their employees would not fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

85. In addition, Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty-two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby…"

86. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

87. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of his disability, and therefore, are being directly or indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 et seq. and/or its implementing regulations.

88. Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Law § 40 et seq. for each and every offense.

**INJUNCTIVE RELIEF**

89. Plaintiff will continue to experience unlawful discrimination because of Defendant's failure to comply with the ADA and the NYSHRL.

90. Pursuant to 42 U.S.C. § 12188, this Honorable Court is vested with the authority to grant injunctive relief in favor of the Plaintiff, including but not limited to the issuance of an Order

DocuSign Envelope ID: 40D846DD-85BA-4144-BEE6-FF2801C00302

to (a) alter the Subject Facility so that they are made readily accessible to, and useable by, all individuals with disabilities, including Plaintiff, as required pursuant to the ADA and NYSHRL, including but not limited to installing and maintaining an ADA-compliant elevator; (b) requiring that it implement policies and procedures for the physically disabled, (c) implementing training for their employees on accommodating the physically disabled, and (d) closing the facilities until the requisite modifications are complete and the Subject Facility is compliant under the ADA and New York State laws.

91. Therefore, injunctive relief is necessary to order Defendant to alter and modify its place of public accommodation, their policies, business practices, operation, policies and procedures.

92. Injunctive relief is also necessary to make the Subject Facility readily accessible and useable by Plaintiff in accordance with the ADA and NYSHRL.

**WHEREFORE**, Plaintiff hereby demands judgment against the Defendant and requests the following injunctive and declaratory relief:

a) A declaration that the Subject Facility owned, leased, operated, controlled and/or administrated by Defendant is in violation of the ADA and the NYSHRL, Executive Law and Civil Rights Law;

b) An Order requiring Defendant to evaluate and neutralize its policies, practices and procedures towards individuals with disabilities, for such reasonable time to allow the Defendant to undertake and complete corrective procedures to the Subject Facility;

c) An Order requiring Defendant undertake and complete a program of actions as may be necessary, to remediate and eliminate all ADA and ADAAG violations found at trial to be present upon the Subject Facility;

d) A declaration that Defendant owns, maintains and/or operates its Subject Facility in a manner which discriminates against developmentally disabled individuals and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.,* Executive Law § 296, *et seq.,* and the laws of New York;

e) An Order requiring Defendant to implement employee staff training and policies and procedures to make the Subject Facility accessible to and useable by individuals with disabilities as required pursuant to Title III of the ADA, the ADAAG, NYSHRL, Executive Law and Civil Rights Law;

f) Requiring that the Subject Facility be closed to the general public until such time as it complies with all ADA and NYSHRL, requirements, including but not limited to complete remediation of its employee training, policies and procedures at the Subject Facility;

g) An Order issuing a permanent injunction ordering Defendant to close the Subject Facility and cease all business until Defendant remove all violations under the ADA and the NYSHRL, including but not limited to the violations set forth herein;

h) Find that Plaintiff is a prevailing party and award reasonable attorneys' fees, costs, disbursements and other expenses associated with this action, in favor of the Plaintiff, and award such pursuant to the ADA and NYSHRL;

i) An award of monetary damages in favor of Plaintiff to the maximum amount permitted by the NYSHRL, Executive Law and Civil Rights Law, as well as, compensatory and punitive damages;

DocuSign Envelope ID: 40D846DD-85BA-4144-BEE6-FF2801C00302

j) Granting the Plaintiff and the Class such other and further relief, as the Court deems just under the circumstances;

k) Granting Class Counsel an award of their attorneys' fees and costs of suit, reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity; and

l) For such other and further relief that this Court deems just, necessary and proper.

Dated: February 9, 2023

Respectfully Submitted,

**BASHIAN & PAPANTONIOU P.C.**
*Attorneys for Plaintiff*
500 Old Country Road, Ste. 302
Garden City, NY 11530
Tel:    (516) 279-1554
Fax:    (516) 213-0339
*By: /s/ Erik M. Bashian, Esq.*
**ERIK M. BASHIAN, ESQ. (EB7326)**
eb@bashpaplaw.com

DocuSign Envelope ID: 40D846DD-85BA-4144-BEE6-FF2801C00302

## **VERIFICATION**

Felicia Bohning, as parent and guardian of G.B., hereby verifies and says that I am the

Plaintiff in the above-captioned case. I have reviewed the allegation and they are true and correct

to the best of my knowledge, information, and belief.

Dated: _2/9/2023_____

DocuSigned by:

00427153353848C...

Felicia Bohning, as parent and
natural guardian of G.B.